UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Direct Capital Corp.

    v.                                              Civil No. 16-cv-366-SM

American Tank Co., Inc.
and Lawrence Romero

### REPORT AND RECOMMENDATION

Plaintiff Direct Capital Corp. ("DCC") brought suit against American Tank Co., Inc. ("ATC") and Lawrence Romero ("Romero") for an award of money damages to satisfy a debt. On June 28, 2017, the Clerk of Court entered default against ATC and Romero for failure to respond to service. See doc. no. 13. DCC's motion for default judgment (doc. no. 14) is now before the court for Report and Recommendation pursuant to Federal Rule of Civil Procedure 55(b)(2). For the reasons that follow, the court recommends that DCC's motion be granted in part and denied without prejudice in part.

### Standard of Review

After default is entered and when the amount at issue is not a sum certain, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); see also KPS &

1

Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003). Before entering a default judgment, the court "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002) (quoting Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992)). The defaulted party is "taken to have conceded the truth of the factual allegations in the complaint . . . ." Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002) (quoting Franco v. Selective Ins. Co., 184 F.3d 4, 9 n. 3 (1st Cir. 1999)). The defaulted party does not, however, "admit the legal sufficiency of those claims." 10 James Wm. Moore, Moore's Federal Practice § 55.32[1][b] (3d ed. 2013). In other words, before entering default judgment, the court must determine whether the admitted facts state actionable claims. See Hop Hing Procedures Inc. v. X & L Supermarket, Inc., No. CV 2012-1401 (ARR) (MDG), 2013 WL 1232919, at *2 (E.D.N.Y. Mar. 4, 2013); E. Armata, Inc. v. 27 Farmers Market, Inc., No. 08-5212 (KSH), 2009 WL 2386074, at *2 (D.N.J. July 31, 2009).

## **Background**

By virtue of its default, defendants concede the following facts alleged in DCC's complaint:

2

DCC is a New Hampshire corporation with a principal place of business at 155 Commerce Way, Portsmouth, New Hampshire. See doc. no. 1 ¶ 2. On or about April 23, 2015, DCC financed ATC's purchase of various equipment as set forth in the Master EFA Agreement No. ME00028654 (the "Agreement"). See doc. no. 1 ¶ 5; doc. no. 1-2. Romero executed a personal guaranty of ATC's obligations as guarantor of the Agreement. See doc. no. 1 ¶ 6; doc. no. 1-2. The purchase involved over forty pieces of equipment, including forklifts, welding machines, air compressors and other equipment (the "Equipment"). Doc. no. 1 ¶ 7. Pursuant to the Agreement, ATC granted DCC a first priority, continuing security interest in the Equipment as collateral for an installment payment plan. See doc. nos. 1 ¶ 8, 1-1. The installment payment plan required ATC to remit monthly payments of $4,231.01 to DCC for a term of 72 months. Id.

On or about April 29, 2015, the parties amended the terms of the payment schedule pursuant to an addendum. See doc. no. 1 ¶ 9; doc. no. 1-4. On or about April 30, 2015, DCC, through Corporation Service Company as its representative, perfected its security interest in the Equipment by filing a UCC Financing Statement with the Clerk of Court for Iberia Parish, Louisiana. See doc. no. 1 ¶ 10; doc. no. 1-5. On or about May 1, 2015, ATC took delivery of the Equipment at 2804 W. Admiral Doyle Drive, New Iberia, Louisiana 70562. See doc. no. 1 ¶ 11. Beginning on

or about May 25, 2015, ATC made the monthly payments due under the Agreement, including additional fees as appropriate. See doc. no. ¶¶ 12-13; doc. no. 1-6.  ATC made ten timely monthly payments under the Agreement. See doc. no. 1-6.

ATC failed to make monthly payments due under the Agreement beginning on or about December 25, 2015.  See doc. no. 1 ¶ 13; doc. no. 1-6.  On or about February 6, 2016, DCC sent ATC and Romero a letter, which advised ATC of its default under the Agreement.  See doc. no. ¶ 14; doc. no. 1-1; doc. no. 1-7.  In response, ATC made one full payment and one partial payment, but failed to cure the default.  See doc. no. 1 ¶ 15.  ATC remained in default as of March 25, 2016, see id., and at the time of the complaint, had defaulted on four monthly payments, see doc. no. 1-6.  Romero has taken no action to cure ATC's default, notwithstanding the guaranty he executed on ATC's behalf.  See doc. no. 1 ¶ 17.

## Discussion

DCC brings separate counts against ATC and Romero for breach of contract.  DCC seeks $225,011.97 in damages for the outstanding amount owed to it by defendants under the Agreement, plus an additional award of $11,340.00 in attorney's fees and $552.51 in costs.  The court considers each count in turn before turning to the requests for damages, fees, and costs.

**I.   Breach of Contract (ATC)**

Under New Hampshire law, "a breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or party of a contract." Axenics, Inc. v. Turner Constr., Co., 164 N.H. 659, 668 (2013). More specifically, the necessary elements of a breach of contract claim are: "(1) A valid contract; (2) material breach of its terms; and (3) resultant damages to the party having the right to complain that the contract has been broken." Campbell v. CGM, LLC, No. 15-cv-088-JD, 2017 WL 78474, *1 at *6 (D.N.H. Jan. 9, 2017) (internal quotations and citations omitted). Upon review of DCC's complaint and the incorporated Agreement, the court concludes that DCC has adequately alleged each of these elements in the present case.

(1)   Valid Contract

DCC has adequately pled the existence of a binding contract between DCC and ATC. In its complaint, DCC alleges that the Agreement between DCC and defendants constitutes a valid and binding contract. See doc. no. 1 ¶ 19. In support of this allegation, DCC attaches the Agreement to its complaint. See doc. no. 1-2. Pursuant to the language of the Agreement, DCC extended financing consideration for the purchase of the Equipment by ATC, and in return ATC agreed to a repayment schedule. Id. The Agreement was signed and executed by ATC on

5

March 31, 2015, and DCC on April 23, 2015.  Id.  Based on the record before the court, the Agreement became a valid and binding contract at this time.  See Tessier v. Rockefeller, 162 N.H. 324, 339 (2011) (citation omitted) ("A valid, enforceable contract requires offer, acceptance, consideration, and a meeting of the minds.").  Thus, the district judge should find that the first element of breach of contract is satisfied as to ATC.

    (2)  Material Breach

DCC has further adequately pled a material breach of the Agreement by ATC.

> A breach is "material" if a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions, the breach substantially defeats the contract's purpose, or the breach is such that upon a reasonable interpretation of the contract, the parties considered the breach as vital to the existence of the contract.

Ellis v. Candia Trailers & Snow Equip., Inc., 164 N.H. 457, 467 (2012) (quoting 23 Williston on Contracts § 63:3, at 438–39 (4th ed.)).  Here, the Agreement provided that ATC would be in default if it "fail[ed] to make any required payment under the [Agreement] when due . . . ."  Doc. no. 1-2 ¶ 15.  DCC asserts that ATC's Equipment was delivered in a full and satisfactory manner and that DCC properly performed on the contract by provided financing for the Equipment.  Doc. no. 1 ¶¶ 11, 21.  DCC alleges that ATC nevertheless defaulted on its contractual

6

obligation to make regular and timely installment payments to DCC. Id. ¶¶ 13, 22. According to DCC, ATC was in default of the agreement as of March 25, 2016, id. ¶ 15, and, at the time the complaint was filed on August 15, 2016, had failed to make four of its installment payments, see doc. no. 1-6. When accepting these allegations as true, and considering them in light of the terms of the Agreement, DCC has pled sufficient facts to establish that ATC committed a material breach of the Agreement. The district judge should accordingly find that the second element of breach of contract is met as to ATC.

    (3)  Resultant Damages to DCC

Finally, DCC has adequately alleged that it suffered damages as a result of ATC's material breach of the Agreement. As noted, DCC asserts that ATC has not made payments under the Agreement since early 2015. See doc. no. 1 ¶ 15. Under the plain terms of the Agreement, DCC is entitled to seek the "unpaid remaining payments minus 4%" in the event of a default. Doc. no. 1-2 ¶ 15. The district judge should therefore find that DCC has satisfied the third element of breach of contract as to ATC.

## II. Breach of Contract (Romero)

In its complaint, DCC alleges that Romero personally guaranteed the Agreement, and that, by virtue of that guaranty, Romero is personally liable for payment of ATC's obligations to

7

DCC.  See doc. 1 ¶ 27.  The Agreement supports this allegation. Romero signed the agreement as guarantor on March 31, 2015.  See doc. no. 1-2.  Per the language of the Agreement, "[a]s consideration for [DCC] entering into the [Agreement], [Romero], jointly and severally, unconditionally personally guarant[eed] that [ATC] [would] make all payments and meet all obligations required under the [Agreement] fully and promptly."  Id. ("PERSONAL GUARANTY" paragraph).  DCC alleges that, despite this language, Romero failed to make timely payments on behalf of ATC pursuant to the terms of the Agreement.  See id. ¶¶ 28-29. Accepting this allegation as true, Romero is in breach of his obligations under the Agreement.

DCC further alleges that it can recover any outstanding sums under the Agreement from Romero.  Again, the Agreement bears this allegation out.  The Agreement stipulates that DCC did "not have to notify [Romero] if [ATC] [was] in default," and that Romero promised to "immediately pay in accordance with the default provision of the [Agreement] all sums due under the terms of the [Agreement]" in the event of a default.  See doc. no. 1-2. Importantly, the contract language specifies that "[i]t is not necessary for [DCC] to proceed first against [ATC] or the Collateral [Equipment] before enforcing [the] guarantee."  Id. The Agreement therefore allows DCC to recover damages against Romero for his breach thereof.

8

The court accordingly recommends that the district judge find that DCC has adequately alleged a breach of the Agreement by Romero.

### III. **Damages**

DCC seeks damages totaling $225,011.97 for defendants' breaches of the Agreement. The language of the Agreement clearly states that if defendants defaulted on the Agreement by failing to make timely and adequate payments, then they would be liable to DCC for the "remaining payments (discounted at 4%), the amount of any purchase option and late charges, taxes, fees and interest on the same . . . ." See doc. no. 1-2 ¶ 15. DCC has provided, as an attachment to its motion, a table demonstrating how it calculated its request for damages. See doc. no. 14-2. This calculation includes 4.6 monthly payments, at a rate of $4,157.85 per month, that were past due as of the time of DCC's complaint was filed; fifty-seven (57) months of accelerated payments, also at a rate of $4,157.85 per month, that were due under the remainder of the Agreement; a discount rate of 4%; a late fee of $4,989.44; a termination fee of $379.00; and a credit of $15,000 for forbearance payments made in December 2016, January 2017, and February 2017. Id. at 2. Upon review of this table, the court concludes that the amount requested by DCC is reasonable under the terms of the Agreement.

The court therefore recommends that the district judge award DCC damages in the amount of $225,011.97.

## IV. Attorney's Fees and Costs

Finally, DCC seeks an award of attorney's fees and costs. An award of reasonable attorney's fees is typically calculated by the lodestar method in which the court multiplies the hours productively spent by a reasonable hourly rate. "'Reasonable hourly rates will vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria.'" Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 16 (1st Cir. 2011) (quoting United States v. One Star Class Sloop Sailboat, 546 F.3d 26, 38 (1st Cir. 2008)). The determination of what constitutes "reasonable" fee is left to the court's discretion. de Jesus v. Banco Popular de P.R., 918 F.2d 232, 233-34 (1st Cir. 1990).

The party seeking a fee award bears the burden of producing materials to support the request. Hutchinson, 636 F.3d at 13. "Appropriate supporting documentation includes counsel's contemporaneous time and billing records and information establishing the usual and customary rates in the marketplace for comparably credentialed counsel." Spooner v. EEN, Inc, 644 F.3d 62, 68 (1st Cir. 2011); see also Bogan v. City of Boston, 489 F.3d 417, 426 (1st Cir. 2007).

The court turns first to DCC's request for $552.51 in costs. DCC's counsel represents, in a sworn affidavit, that this amount accounts for the filing fee in this district, fees expended by DCC in attempting to serve process on defendants, and other ancillary costs such as copying costs, certified mail, and postage. See doc. no. 14-3 ¶ 2. In the court's view, this request is reasonable. The court therefore recommends that the district judge award DCC the full amount of costs requested.

At present, however, DCC's counsel has not provided sufficient documentation accounting for how his request for attorney's fees was derived. In his sworn affidavit, DCC's counsel states that he "estimate[s] that the time incurred [on this case] is approximately 37.80 hours at $300.00 per hours . . . ." Id. He goes on to state that this hourly rate "is fair and reasonable and is representative of the types of fees charged in the community by persons of similar ability for similar work." Id. ¶ 4. These representations, unbolstered by any supporting documentation, do not provide the court with sufficient information to determine whether DCC's request is reasonable. Spooner, 644 F.3d at 68. The court therefore recommends that the district judge deny DCC's request for attorney's fees without prejudice to renewal, with sufficient supporting documentation, within fifteen (15) days of the date

of the district judge's order either approving or rejecting this Report and Recommendation.

## Conclusion

For the reasons stated above, the court recommends that the district judge: (1) grant default judgment to DCC on its breach of contract claims against ATC and Romero; (2) award DCC $225,011.97 in damages; (3) award DCC $552.51 in costs; and (4) deny DCC's request for attorney's fees without prejudice to renewal within fifteen (15) days of the date of the district judge's order on this Report and Recommendation.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal and the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

October 26, 2017
cc: Thomas K. McCraw, Jr., Esq.